**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**SHELBY J. NORRIS**                                                                                    **PLAINTIFF**

V.                                        **NO. 4:08CV00352-BD**

**MICHAEL J. ASTRUE,**
**Commissioner, Social Security Administration**                          **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Shelby J. Norris brings this action for review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for Disability Insurance benefits ("DIB") under Title II of the Social Security Act (the "Act") and Supplemental Security income ("SSI") under Title XVI of the Act.

**I.     Administrative Proceedings:**

Plaintiff protectively filed her application for DIB and SSI on September 23, 2002, alleging disability since January 2, 1994. (Tr. 148) After a hearing, the Administrative Law Judge ("ALJ") issued an unfavorable decision. (Tr. 14, 73-85) The Appeals Council granted review of the decision and vacated and remanded the Plaintiff's case for further consideration. (Tr. 14, 39-41) On remand, the case was reassigned to a new ALJ[1]

---

[1] The Honorable Mark S. Anderson.

who held a second hearing on July 18, 2006. (Tr. 480) Ms. Norris was present at the hearing, along with her attorney. (Tr. 14)

On October 26, 2006, the ALJ issued a decision finding that Plaintiff was not disabled under the Act and denying her claim for benefits. (Tr. 14-23) On February 25, 2008, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 5-8) Plaintiff seeks judicial review from this decision under 42 U.S.C. § 405(g).

## II.     Background:

At the time of the hearing, Plaintiff was forty-seven years old and lived by herself. (Tr. 23, 447) She had a high school education and past relevant work as a waitress, data entry clerk, bartender, accounts receivable clerk, babysitter, and fast food worker. (Tr. 409, 464) At the time of the hearing, Plaintiff was working approximately twenty hours per week at Taco Bell. (Tr. 409, 445) She was not taking any prescription medication, but she was taking aspirin and using hot and cold bags for pain. (Tr. 454)

## III.    ALJ's Decision:

The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled an impairment listed in the Listing of Impairments in Appendix 1, Subpart P, 20 C.F.R. Part 404; (4) if not, whether the impairment (or combination of impairments)

prevented the claimant from doing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g) (2005).

The ALJ found that in spite of the fact Plaintiff was working twenty hours per week at a fast food restaurant, her work did not constitute substantial gainful activity and that she had not engaged in substantial gainful activity since her alleged onset date. (Tr. 14, 22)  The ALJ found that Plaintiff had been treated for back pain and mood and delusional disorders but did not have a "listed" impairment, or combination of impairments. (Tr. 22)  The ALJ determined that Plaintiff did have the residual functional capacity ("RFC") to perform her past work as a fast food worker. (Tr. 23)  He also found, based on the testimony of a vocational expert ("VE"), that Plaintiff could perform work as an office helper, and the VE testified that there are a significant number of office helper jobs available in the national economy. (Tr. 18)

IV.   **Analysis:**

   A.   *Standard of Review*

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the administrative record to support the decision. 42 U.S.C. § 405(g). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir.

2007).  In reviewing the record as a whole, the Court "must consider the evidence which detracts from the Commissioner's decision, as well as the evidence in support of the decision," but the decision cannot be reversed, "simply because some evidence supports a conclusion other than that of the Commissioner." *Pelkey v. Barhart*, 433 F.3d 575, 578 (8th Cir. 2006).

     B.    *Residual Functional Capacity*

"Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619-620 (8th Cir. 2007) (citing 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006)).  "The ALJ should determine a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (citing *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)).

Plaintiff claims the ALJ's findings regarding her mental RFC are not supported by the medical evidence.[2]  (#9 at p. 8)  Plaintiff also claims the ALJ gave more weight to the

---

[2] Plaintiff does not challenge the ALJ's physical RFC assessment in this appeal.  In her brief, Plaintiff acknowledged that, "the objective medical evidence does not support the claim for physical ailments alleged by the claimant and that is conceded."  (#9 at p. 5)

consultative examination opinion of Dr. Boyd rather than the treating source medical opinions and the opinions of the other consulting sources. (#9 at p. 11)

1.  The Medical Evidence

On October 12, 1993, prior to Plaintiff's alleged onset date, Lisa Beisel, M.D., at Professional Counseling Associates, diagnosed Plaintiff with post traumatic stress disorder and a major depressive episode. (Tr. 206) Dr. Beisel assigned Plaintiff a Global Assessment Functioning ("GAF")[3] rating of between 60 and 70. (Tr. 206) On February 9, 1994, Betty Bessent, a Licensed Clinical Social Worker at Professional Counseling Associates, reported that Plaintiff was receiving "periodic supportive therapy but was not being prescribed any medication." (Tr. 201) On March 31, 1994, Ms. Bessent noted that Plaintiff was being seen "irregularly" and assigned Plaintiff a GAF score of 56. (Tr. 200) The medical records indicate Plaintiff attended approximately ten counseling sessions at Professional Counseling Associates between October 4, 1993 and May 12, 1994. On July 19, 1994, Professional Counseling Associates officially terminated Plaintiff's case noting that they last saw her on May 12, 1994, when her condition was "improved." Plaintiff has not receive treatment for any mental condition since her treatment at Professional Counseling Associates.

---

[3] "[T]he Global Assessment of Functioning Scale is used to report 'the clinician's judgment of the individual's overall level of functioning.'" *Hudson ex rel. Jones v. Barnhart*, 345 F.3d 661, 662 n. 2 (8th Cir. 2003) (quoting Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. Text Revision 2000)).

5

On November, 2, 2002, Plaintiff was evaluated by Dr. Anna M. Clark in relation to her applications for DIB and SSI. Dr. Clark noted that during her interview Plaintiff was understandable, had a "fair ability to concentrate, persist and keep pace," and did not exhibit two or more areas with significant limitations in adaptive functioning. (Tr. 234-35) In spite of these findings, Dr. Clark assigned Plaintiff a GAF score of 40 and diagnosed her with amnestic disorder and mood disorder "due to head trauma," and persecutory type delusional disorder. (Tr. 234)

On April 7, 2003, Dr. Ken Counts evaluated Plaintiff in relation to her application for benefits. Dr. Counts stated that Plaintiff communicated adequately, seemed to get along well with others, and that her concentration, persistence, and pace were "unremarkable" except for a "halting quality to her speech." (Tr. 239) Dr. Counts diagnosed Plaintiff with mood disorder and assigned her a GAF score of 40. He noted that Plaintiff did have "trust issues and some persecutory ideas." Dr. Counts opined, "it would be difficult for her to remember and carry out instructions in a work setting," and "she could have difficulty with supervision and co-workers." (Tr. 239)

Finally, on August 31, 2004, Dr. Sam Boyd evaluated the Plaintiff. At the evaluation, Plaintiff reported she had worked part-time from 1999-2001, after which she had worked part-time at a restaurant until it closed, then she had run a daycare in her home for about a year. At the time of the interview with Dr. Boyd, she had been working for the past month as a bar tender on weekends. (Tr. 313) Dr. Boyd found that Plaintiff

did not "experience hallucinations, delusions, paranoia, or other psychotic thinking"; her affect was "full and stable"; and her mood was "euthymic." (Tr. 313-14) Dr. Boyd administered the Wechsler Adult Intelligence Scale-Third Edition test to Plaintiff. Plaintiff's scores indicated she was functioning in the "average range of intellectual ability" and "would be able to understand, remember, and carry out work instructions at a moderate level of complexity." (Tr. 314) Dr. Boyd also administered the Wechsler Memory Scale-Revised test, and her scores indicated she had an "average to above average memory ability." (Tr. 315) Dr. Boyd noted that he also administered the Minnesota Multiphasic Personality Inventory and could not explain why she had not followed the directions in response to a number of items on the test except that she may have misunderstood the directions. (Tr. 315-16) He was unable to score the test. (Tr. 316) Dr. Boyd did not diagnose Plaintiff with any mental impairment and gave her a GAF score of 85. (Tr. 316)

At the request of the ALJ, Dr. Boyd addressed Dr. Counts's opinion that, due to cognitive difficulties, it would be difficult for Plaintiff to remember and carry out instructions, and that she could have difficulty with supervision and co-workers. Dr. Boyd responded:

> [H]er condition appears to have improved significantly. Specifically, I did not note any cognitive difficulties. On the contrary, Ms. Norris appears to be functioning well within the average range of intelligence, academic achievement and memory ability. She showed no deficits in concentration during today's evaluation. I do not believe she would have any difficulty using cognitive skills in the work setting . . . . I do not believe that she will

7

>have difficulty relating to others at work. . . . It is my opinion that she could engage in work much more sophisticated than unskilled work, and could engage in relatively sophisticated and complex interactions with the public and coworkers.

(Tr. 318-19)

    2.    <u>Treating Sources</u>

Under 20 C.F.R. §§ 404.1513(a) and 416.913(a), a licensed or certified psychologist qualifies as an "acceptable medical source" who can provide evidence to establish a medically determinable impairment. Generally, the regulations require that an ALJ give more weight to the opinion of a treating medical source than to the opinion of a consulting medical source, as long as the opinion of the treating medical source is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2), 20 C.F.R. § 416.927(d)(2). The ALJ may consider "other sources" such as therapists and social welfare agency personnel to show the severity of an impairment and how it affects the claimant's ability to work, but not to establish the impairment. See 20 C.F.R. §§ 404.1513(d) and 416.913(d).

In this case the only treating medical source was Dr. Beisel at Professional Counseling Associates. The medical records indicate, however, that Dr. Beisel's only treatment of Plaintiff occurred in October, 2003, prior to Plaintiff's alleged onset date. The records indicate that Ms. Bessent, a clinical social worker who does not qualify as an acceptable medical source under § 404.1513(a) or § 416.917(a), counseled Plaintiff on

her remaining visits to the clinic. Consequently, Plaintiff does not have a treating source medical opinion from the relevant time period in the record to establish her impairment.

### 3. Consulting Sources

The remaining medical records are those of the consulting psychologists who evaluated Plaintiff pursuant to her claim for benefits. Plaintiff claims the ALJ inappropriately gave more weight to the opinion of one consulting psychologist, Dr. Boyd, over the opinions of two other consulting psychologists, Drs. Clark and Counts.

The ALJ may reject the opinion of a medical expert when it is inconsistent with the medical records as a whole. *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) (citing *Pearsall v. Massanari*, 274 F.3d 1211, 1218-19 (8th Cir. 2001)). The ALJ is responsible for resolving conflicts among treating and examining physicians. *Id*. (citing *Bentley v. Shalala*, 52 F.3d 784, 785-87 (8th Cir. 1995)).

In this case, the ALJ considered all of the consulting psychologists' opinions and appropriately resolved the conflicts. The ALJ specifically addressed Dr. Clark's conclusion that it would be difficult for Plaintiff to remember and carry out instructions and interact with supervisors and co-workers. He noted these conclusions were contrary to Dr. Boyd's, but also noted the conclusions contradicted Plaintiff's reported daily activities. Further, he noted Dr. Clark's conclusions regarding Plaintiff's memory and concentration problems were based on Plaintiff's self-reported head trauma, which Dr. Clark did not confirm with objective medical evidence. (Tr. 15) See *Vandenboom v.*

*Barnhart*, 421 F.3d 745, 749 (8th Cir. 2005) (failure to document objective medical evidence to support subjective complaints justified giving treating neurologist's opinion less weight).

The ALJ also addressed Dr. Counts's conclusion that Plaintiff would be unable to remember and carry out instructions in a work setting. The ALJ discounted Dr. Counts's conclusion based, in part, on Plaintiff's testimony that just months after the evaluation she began babysitting and then working as a cashier. She also reported shopping, paying bills, performing household chores, cooking, and handling her own finances. (Tr. 21) The ALJ also pointed out that Dr. Counts confirmed that Plaintiff was not on any medications; her IQ was estimated at 80 or greater; and she did not exhibit any psychotic symptoms. (Tr. 16) Dr. Counts noted memory deficits but stated they were taken care of by "reminders to herself." (Tr. 16)

Finally, the ALJ gave greater weight to Dr. Boyd's opinion because his conclusions were more consistent with Plaintiff's activities of daily living and testimony. (Tr. 21) At the hearing, Plaintiff denied any mental impairment or treatment for a mental impairment since her treatment in 1994. (Tr. 450-53) Further, Plaintiff denied taking any medication for a mental impairment. (Tr. 453) Plaintiff stated, "I'm not mentally off." (Tr. 450) When the ALJ asked Plaintiff what prevented her from working full time, Plaintiff did not allege a mental disorder. Instead, Plaintiff stated, "I *physically* really can't do any more." (Tr. 445) When asked whether the decision to work part time was

her decision or someone else's, she responded that she told the manager when she was hired she had a "back problem" and "a problem with my hands." (Tr. 446) Later in the hearing, Plaintiff stated if she "didn't have any physical problems I could probably ask for more [hours] or go someplace that had more." (Tr. 446)

Weighing all of the medical source evidence, not just Dr. Boyd's opinion, and the other evidence, including the Plaintiff's testimony, the ALJ found Plaintiff had "mild limitation maintaining social functioning, mild limitation with concentration, persistence, and pace" and "no episodes of deterioration or decompensation in the work place." Accordingly, in his RFC assessment, the ALJ appropriately limited Plaintiff to jobs where the "interpersonal contact is incidental to the work performed; complexity of tasks is learned and performed by rote with few variables and requiring little judgment; and supervision required is simple, direct, and concrete." (Tr. 21)

    4.    Other Evidence

In her brief, Plaintiff claims the ALJ failed to "give proper weight to the retrospective opinions of treating sources which were corroborated by evidence from lay witnesses, particularly the observations of the Judge in her child custody case." (#9 at p. 11) In support of this argument, Plaintiff cites to *Jones v. Chater*, 65 F.3d 102, 104 (8th Cir. 1995). Plaintiff's reliance on *Jones* is misplaced.

In *Jones*, the issue was whether the retrospective medical diagnosis of post-traumatic stress disorder, that was uncorroborated by contemporaneous medical reports

but was corroborated by testimony of relatives about the claimant's personality during his eligibility period, could support a finding of past impairment. *Id*. at 103  The Court of Appeals for the Eighth Circuit held that the testimony of the claimant's relatives, which corroborated the post-period diagnosis, was relevant and should have been considered by the ALJ. *Id*.

In this case, unlike in *Jones*, there is no retrospective diagnosis by a treating source.  Here the ALJ based his opinion on the opinions of consulting psychologists who examined Plaintiff during the relevant time period and on the opinion of a treating source who diagnosed Plaintiff *before* her alleged onset date.  Further, in this case, unlike in *Jones*, the ALJ considered the transcript from the child custody hearing at Plaintiff's hearing and found that, because he did not have access to any of the evidence presented to the Circuit Court, the Judge's comments were hearsay.  (Tr. 460)  The ALJ then advised Plaintiff that if she had any supporting records or doctors' reports she had not submitted, she could submit them after the hearing.  (Tr. 460)  Plaintiff did not submit any additional reports, and the ALJ appropriately did not consider the Judge's order as evidence establishing Plaintiff's mental impairment.  See 20 C.F.R. §§ 404.1513(d) and 416.913(d) (ALJ may use evidence from other sources only to show the severity of a claimant's impairment and how it affects the claimant's ability to work but not to establish an impairment).

C.    *GAF Scores*

Plaintiff claims the ALJ did not give appropriate weight to her GAF scores. The Commissioner has declined to endorse the GAF scales to evaluate Social Security claims because the scales do not have a direct correlation to the severity requirements in mental disorders listings. See 65 Fed.Reg. 50746, 50764-65 (Aug. 21, 2000). Thus, an ALJ may afford greater weight to medical evidence and testimony than to a GAF score when the evidence requires it. See *Hudson v. Barnhart*, 345 F.3d 661, 666 (8th Cir. 2003).

Plaintiff points out that, prior to her onset date, Professional Counseling Associates assigned her a GAF of 60-70. (Tr. 206) From January 2, 1994, her alleged onset date, until October 26, 2006, the date of the ALJ's decision, she received four GAF scores. On March 31, 1994, Ms. Bessent assigned Plaintiff a GAF score of 56. (Tr. 200) On November 27, 2002, Dr. Clark assigned Plaintiff a GAF score of 40. (Tr. 234) On April 7, 2003, Dr. Counts also assigned Plaintiff a GAF score of 40, and finally on August 19, 2004, Dr. Boyd assigned Plaintiff a GAF score of 85. (Tr. 239, 316) Plaintiff claims the GAF score of 85 is inconsistent and the GAF scores of 40 reflect, "some impairment in reality testing or major impairment in several areas such as judgment; family; work/school; thinking or mood" indicating her inability to work. (#9 at pp. 9-10)

In his opinion, the ALJ did not specifically discuss the Plaintiff's GAF scores. The ALJ did discuss, however, the reports of both Dr. Clark and Dr. Counts in detail and, as set forth above, did not err in assigning greater weight to Dr. Boyd's report and the

13

Plaintiff's testimony in this case than to the two GAF scores assigned to Plaintiff between November, 2002, and April, 2003.

D.   *Listed Impairment and Closed Period*

Plaintiff claims the ALJ erred by finding she did not have a listed impairment under 12.04 or 12.08 of Appendix 1. In order for the Plaintiff to establish that her impairment matches a listing, she "must meet all of the specified medical criteria" for that listing. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885 (1990). Part B of Listings 12.04 and 12.08 requires that a claimant's mental impairment result in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; and (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 12.04, 12.08. As set forth above, substantial evidence supports the ALJ's conclusion that Plaintiff did not have marked restriction of her activities of daily living, marked difficulties in maintaining social functioning, marked difficulties with concentration, persistence or pace, or repeated episodes of decompensation. Accordingly, the ALJ did not err in finding Plaintiff did not have a listed impairment.

Finally, Plaintiff argues she is entitled to a closed period of disability from the alleged onset date until the August 31, 2004. Plaintiff is not entitled to any period of disability, however, because substantial evidence supports the ALJ's conclusion that

Plaintiff was not "disabled," as defined by the Social Security Act, for any period after the alleged onset date through the date of the decision. See 20 C.F.R. §§ 404.1520(f) and 416.920(f).

V.    **Conclusion:**

The Court has reviewed all of the evidence in the record. There is substantial evidence in the record as a whole to support the Commissioner's conclusion that Plaintiff has the residual functional capacity to return to her past work or make an adjustment to other work available in the local, regional, and national economy.

Accordingly, Plaintiff's appeal is DENIED. The Clerk is directed to close the case, this 28th day of May, 2009.

_____
UNITED STATES MAGISTRATE JUDGE